### In re Godfrey H. Roessel, Jr.

[388 A.2d 835]

No. 41-77

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed June 6, 1978

*James L. Morse,* Defender General, *Charles S. Martin,* Appellate Defender, and *Kenneth S. Ampel,* Law Clerk (On the Brief), Montpelier, for Petitioner.

*M. Jerome Diamond,* Attorney General, and *Richard A. Unger,* Special Assistant Attorney General, Montpelier, for Respondent.

Daley, J. A rather complicated series of criminal charges and attendant proceedings over a two-year period underlie this appeal from the denial of a petition for a writ of habeas corpus. The writ was sought to test the legality of a Governor's warrant and thereby prevent the appellant's extradition to New Hampshire. In summary, the facts are as follows.

In June 1974, Roessel was arrested and appeared in Claremont, New Hampshire District Court on two burglary charges. He was released on $1,000 personal recognizance bail. On September 2, he was arrested in New Hampshire as a fugitive from justice in connection with an alleged assault in Springfield, Vermont. Roessel subsequently waived extradition and was brought to Vermont for arraignment in the District Court of Vermont at White River Junction. Unable to post bail, he was placed in the custody of the Vermont Commissioner of Corrections.

Meanwhile, a Sullivan County, New Hampshire, grand jury returned two indictments against Roessel for the burglaries mentioned above and for a third unrelated charge of assault. On September 12, 1974, the clerk of the Sullivan County Superior Court issued a capias commanding the arrest and detention of Roessel in connection with the assault unless bail of $5,000 was posted.

On March 15, 1975, after a hospitalization hearing, Roessel was adjudged mentally ill and admitted into the care and

custody of the Vermont Department of Mental Health and was sent to the State Hospital. The pending Vermont criminal charges were contemporaneously dismissed.

On August 19, 1975, Roessel was arraigned in the District Court of Vermont in Barre in connection with an alleged assault committed in the Town of Waterbury. At the time of the alleged assault, he was enrolled in an out-patient rehabilitation program at the State Hospital. He was unable to post bail in connection with the charges and was held at the St. Johnsbury and Rutland Correctional Centers.

Subsequently, the Sullivan County, New Hampshire, sheriff forwarded to Vermont Corrections Department officials the capias issued a year earlier in response to the assault indictment. His cover letter indicated that the capias was to be used as a detainer. According to the parties' stipulation of facts, the St. Johnsbury facility superintendent remembered receiving a telephone call from the New Hampshire sheriff and remembered advising appellant of the outstanding warrant and impending detainer. Apparently, a counsellor later reminded appellant of the pending New Hampshire charge, however, it was not until May 13, 1976, after a court appearance that he first learned that there was a New Hampshire detainer actually in his file.

In April 1976, one of the pending Vermont charges against Roessel was dismissed. Later on May 13, the remaining charge was reduced, at which time a plea and judgment of guilty were entered and sentence imposed with credit allowed for time already served.

On May 14, 1976, as he was about to be released from the Rutland Correctional Center, Roessel was arrested as a fugitive from justice in New Hampshire in connection with the August 1974 assault indictment. Roessel refused extradition and remained in custody for lack of bail awaiting the arrival of the Governor's warrant.

Meanwhile, the New Hampshire Superior Court revoked the recognizance bail previously granted in the burglary charges and two capiases to that effect were issued. Upon their receipt in Vermont, informations were issued and Roessel was arrested as a fugitive from justice in New Hampshire in connection with the burglaries. The earlier fugitive complaint

was dismissed. Roessel was released on personal recognizance bail.

The requisition of the Governor of New Hampshire was executed, and a warrant of the Vermont Governor was issued for Roessel's arrest. Thereafter, Roessel petitioned for a writ of habeas corpus. 13 V.S.A. § 4950; 12 V.S.A., ch. 143.

The appellant made four claims in his petition for a writ of habeas corpus. First, the warrant was insufficient as a matter of law pursuant to 13 V.S.A. § 4947; secondly, he was not a fugitive from justice because the revocation of his bail on the burglary charges was invalid in that he had not violated the terms and conditions of that bail; thirdly, the voluntary transfer and relinquishment of custody to Vermont by the New Hampshire court in September 1974 constituted a waiver of jurisdiction and thus New Hampshire lacks authority to extradite or prosecute; and fourthly, his constitutional rights to due process and to a speedy trial were violated when Vermont Department of Corrections officials failed to afford him an opportunity to dispose of pending New Hampshire charges at the time of their receipt of the detainer from the Sullivan County, New Hampshire, sheriff. 28 V.S.A., ch. 25.

This Court has described the inquiry into the extradition process through habeas corpus as a three-pronged examination of a limited nature: is the petitioner validly restrained under the applicable constitutional and statutory provisions, i.e. as a question of fact, is he a fugitive from justice of the demanding state; is the person held in custody the one charged in the warrant or requisition; and is the requisition request still in effect. *Russell* v. *Smith*, 127 Vt. 225, 227, 245 A.2d 563, 564–65 (1968).

The appellant apparently conceded below that the procedural aspects of the warrant were valid, *e.g.*, identity, timeliness, etc. Essentially what he argues is that he is not, in fact, a fugitive from justice. The trial court concluded that his claims were not proper subjects of review in the habeas corpus proceeding. We agree and affirm.

At the outset, he challenges the bail revocation that gave rise to the fugitive warrants upon which the extradition request is based. However, the informations alleging that he was a fugitive from justice are not subject to review in

the habeas corpus action since detention is predicated upon the Governor's warrant. Cf. *In re Bryant*, 129 Vt. 302, 306, 276 A.2d 628, 631 (1971).

 The appellant also has presented an elaborate argument contending that failure to advise him of the filing of the detainer on the New Hampshire assault charge violated Vermont's Interstate Agreement on Detainers Act (28 V.S.A., ch. 25) and various constitutional rights. The foundation of this argument is that any violation of his constitutional and statutory rights must be adjudicated by Vermont courts. He believes that the issues will be moot if he is extradited since he claims that it was the conduct of Vermont rather than New Hampshire officials which deprived him of his rights and give rise to his legal complaint.

We do not agree. This proceeding concerns the validity of the Governor's warrant relating to New Hampshire burglary charges and not the alleged earlier detainer on a New Hampshire assault charge. Furthermore, the duties arising under the act apply when the individual has entered into a term of imprisonment. 28 V.S.A. § 1503 (article III). Appellant was not under a "term of imprisonment," until May 13, 1976, when he pled guilty to a simple assault charge and a judgment of guilty was entered in the District Court of Vermont at Barre; and at that time he became fully aware of the capias, denominated a detainer by the sheriff's cover letter, which was based solely on the pending New Hampshire assault charge.

Also, the record belies appellant's claim that his opportunities for review of his constitutional claims are foreclosed. We believe that this situation is analogous to that presented to this Court in *Russell* v. *Smith, supra,* 127 Vt. 225, 245 A.2d 563 (1968). It appears that his speedy trial claims would remain viable for consideration by New Hampshire state or federal courts, and we decline to answer claims appropriately addressed in the forum of the demanding state. Cf. *United States* v. *Mauro,* 98 S. Ct. 1834 (1978).

 Appellant also argues that New Hampshire may not now demand his extradition, claiming that it waived jurisdiction when it released him to Vermont at a time when New

Hampshire charges were still pending, an argument which apparently would create an exception to the general principle of the Uniform Criminal Extradition Act, 13 V.S.A., ch. 159; N.H.R.S.A. 612. The gist of this waiver argument is an implied requirement that an asylum state, in which criminal charges are pending, must expressly reserve the right of return as a condition of release to preserve its jurisdiction.

There is no authority for this proposition in the act itself. To the contrary, N.H.R.S.A. 612: 27 and its identical Vermont provision, 13 V.S.A. § 4968, specifically state:

> Nothing contained in this subchapter shall be deemed to constitute a waiver by this state of its right, power or privilege to try such demanded person for crime committed within this state, or of its right, power or privilege to regain custody of such person by extradition proceedings or otherwise for the purpose of trial, sentence or punishment for any crime committed within this state, nor shall any proceedings had under this subchapter which result in, or fail to result in, extradition be deemed a waiver by this state of any of its rights, privileges or jurisdiction in any way whatsoever.

We decline to adopt the proposition advanced by the appellant, and we find scant support for it in the decisional law of sister states. But see *Peoples* v. *State*, 523 P.2d 1123 (Okla. Crim. App. 1974); *People ex rel. Davis* v. *Quinlin*, 69 Misc. 2d 708, 330 N.Y.S.2d 544 (1972). The duty to deliver a person charged with an offense emanates from the federal constitution (United States Constitution, Art. IV, § 2) and in keeping with the spirit of comity, waiver should not be presumed. Indeed, it is manifest that New Hampshire intended to retain jurisdiction as evidenced by an indictment being handed down after appellant's transfer to Vermont as well as the lodging of detainers and its present demand for rendition.

*Affirmed; to be certified down forthwith.*